UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HANOVER EXCHANGE,

      Plaintiff,

v.

METRO EQUITY GROUP LLC, EXCEL
ESCROW SERVICES LLC, EXCEL TITLE
AGENCY LLC, COREY HOWARD, and
JANEL CHIPMAN,

      Defendants.

_____/

Case No. 2:08-cv-14897

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTIONS TO DISMISS** (document nos. 9 & 33)
 **AND ADJOURNING THE SCHEDULING CONFERENCE** (document no. 40)

**INTRODUCTION**

In this case, plaintiff Hanover Exchange ("Hanover") alleges that it entered a contract

with defendant Metro Equity Group, LLC ("Metro"), whereby Metro would purchase, on

behalf of Hanover, several dozen residential properties in New Jersey.  Defendant Corey

Howard acted as Metro's agent, and appears to have been the principal or perhaps even

the only employee of Metro who Hanover dealt with.  The contract allegedly called for

Hanover to deliver an escrow deposit of just over $125,000 to defendant Excel Title Agency

("Excel Title"), a title company operated by defendant Janel Chipman.  According to the

complaint, however, Metro never delivered a single title to Hanover, but instead prevailed

upon Chipman and Excel Title to transfer the escrow funds without Hanover's consent or

any other authorization, first to defendant Excel Escrow Services ("Excel Escrow"), and

later to Metro, which then allegedly used the funds for purposes not authorized by the

contract.

The complaint asserts ten counts, all under Michigan law.  Count I, against all defendants, is for conversion of the escrow funds.  Count II, also against all defendants, alleges a civil conspiracy to defraud Hanover out of the escrow money.  Count III, against Chipman and Excel Title only, asserts a breach of their fiduciary duties as escrow agents.  Count IV asserts that Metro breached the contract with Hanover.  Count V, pleaded in the alternative against all defendants, is for unjust enrichment.  Count VI seeks a declaratory judgment that the contract binds the defendants and that the escrow funds belong to Hanover.  Count VII is a claim for promissory estoppel, asserted against all defendants.  Count VIII is an attempt to rescind the contract based on fraud in the inducement.  Count IX, also against all the defendants, is for negligent misrepresentation.  Count X simply seeks injunctive relief based on the other grounds for liability.

Before the Court are two motions filed pursuant to Federal Rule of Civil Procedure 12(b)(6), each of which seeks to several of these counts, or portions thereof, for failure to state a claim on which relief can be granted.  One of the motions is by defendants Howard and Metro; the other is by Chipman, Excel Title, and Excel Escrow.  Both motions purport to request dismissal of all the claims against the applicable individual defendant, but neither actually addresses all of the claims asserted by the complaint against Howard or Chipman.  The Court will discuss only those claims against which defendants offer argument.

## LEGAL STANDARD

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557; 127 S. Ct. 1955, 1966 (2007) (citations omitted).  Accordingly, Federal

Rule of Civil Procedure 12(b)(6) allows a defendant to test whether, as a matter of law, the

plaintiff is entitled to legal relief even if everything alleged in the complaint is true.  *See*

*Minger v. Green*, 239 F.3d 793, 797 (6th Cir. 2001) (citations omitted).

In assessing a motion brought pursuant to Rule 12(b)(6), the Court must presume all

well-pleaded factual allegations in the complaint to be true and draw all reasonable

inferences from those allegations in favor of the non-moving party.  *Bishop v. Lucent*

*Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).  To determine whether Plaintiff has stated

a claim, the Court will examine the complaint and any written instruments that are attached

as exhibits to the pleading. Fed. R. Civ. P. 12(b)(6) & 10(c).  Although the pleading

standard is liberal, bare assertions of legal conclusions will not enable a complaint to

survive a motion pursuant to Rule 12(b)(6). *In re DeLorean Motor Co.*, 991 F. 2d 1236,

1240 (6th Cir. 1993). The Court will not presume the truthfulness of any legal conclusion,

opinion, or deduction, even if it is couched as a factual allegation.  *Morgan v. Church's*

*Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

The Federal Rules of Civil Procedure

> do not require a claimant to set out in detail the facts upon which he bases
> his claim.  To the contrary, all the Rules require is "a short and plain
> statement of the claim" that will give the defendant fair notice of what the
> plaintiff's claim is and the grounds upon which it rests.

*Conley v. Gibson*, 355 U.S. 41, 47 (1957).  This standard requires the claimant only to put

forth "enough facts to raise a reasonable expectation that discovery will reveal evidence

of [the requisite elements of the claim]." *Bell Atlantic*, 127 S. Ct. at 1965.  Thus, although

"a complaint need not contain 'detailed' factual allegations, its '[f]actual allegations must be

enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555). Therefore, the Court will grant a motion for dismissal pursuant to Rule 12(b)(6) only in cases where there are simply not "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570.

## ANALYSIS

### I.    Count I-- Conversion

Hanover's first claim is that the defendants have converted the $125,000 escrow deposit.  In Michigan, conversion is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."  *Thomas v. Tracy Motor Sales, Inc.*, 360 Mich. 434, 438 (1960) (quoted in *Priesman v. Meridian Mutual Ins. Co.*, 441 Mich. 60, 74 n.19 (1992)).  Howard levels three arguments as to why the facts alleged by Hanover do not support such a claim.

First, Howard correctly notes that failure to pay a debt, without more, does not amount to conversion of the unpaid funds.  According to the Michigan Supreme Court, "conversion is maintainable for money when trover would lie under the former practice," and "[t]rover is not maintainable for money unless there be an obligation on the part of the defendant to return the specific money intrusted to his care." *Garras v. Bekiares*, 315 Mich. 141, 148 (1946) (quoting *Alfred Shrimpton & Sons v. Culver*, 109 Mich. 577, 580 (1896)).  The Court is satisfied, however, that by alleging that defendants used the money in the escrow account for unauthorized purposes when in fact they were duty bound to return the funds, Hanover has brought its claim within the "specific money" exception to this rule.  The Michigan Supreme Court has held that "[a]n action for conversion lies where an individual cashes a check and retains the full amount of the check when he is entitled to only a

4

portion of that amount," *Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.*, 178 Mich. App. 570, 576 (1989) (citing *Hogue v. Wells*, 180 Mich. 19, 23 (1914)), and has even specifically held that the misuse of escrow funds can constitute unlawful conversion. *Cozadd v. Healy,* 338 Mich. 157, 160 (1953).  The case cited by Howard, *Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich. App. 94 (1999), is not to the contrary.  There the defendants refused to return the purchase price of a defective product even after the buyer lawfully revoked her acceptance of the product.  The Court of Appeals held that as a matter of law this was not conversion of the purchase price by the defendants, "because they were under no obligation to return the specific money entrusted to them."  *Id.* at 112.  The court even reiterated the rule noted above, that under Michigan law an action does lie "where the defendant cashes a check as the plaintiff's agent or bailor and retains an amount to which he was not entitled." *Id.* n.3.[1]

Second, Howard appears to argue that he cannot have converted the money because he is under no obligation to return it until and unless the Court orders him to do so after resolving all the claims in this case.  Howard cites no authority in support of this bizarre and nonsensical argument, which would make conversion a mere method of enforcing judgments entered on other legal theories and eliminate its viability as an independent legal claim.  The Court will not consider it further.

Finally, Howard argues that neither he nor Metro have exercised dominion over the funds, and thus that a conversion claim properly lies only against Chipman, Excel Title, and

---

[1]  Howard makes what the Court regards as the subsidiary argument that a check deposited in escrow is the property of the payee -- here Metro -- rather than the payor, and so cannot be converted by the payee.  This may be true, but it does not prevent Hanover from alleging, as it has here, that  when defendants deposited the check and used the resultant fund of money for unauthorized purposes, they converted the money itself.  This is precisely the type of claim authorized by the cases cited above.

Excel Escrow, who have actual custody of the deposit.  This is simply a misstatement of the allegations of the complaint, which specifically alleges that "ETA, EES and Defendant Chipman have allowed MEG to use escrowed funds to pay . . . amounts greater than authorized by Plaintiff in the Contracts."  Compl., document no. 1, ¶ 40.  Obviously then, Metro and/or Howard are alleged to have exercised dominion over at least some of the funds, and the complaint therefore fairly states a conversion claim against them.

II.     Counts II and VIII-- Civil Conspiracy to Defraud and Fraud in the Inducement

In Count II of its complaint, Hanover alleges that all the defendants participated in a civil conspiracy to defraud it by misrepresenting their intent to use the funds as agreed between the parties.  In Michigan, "[a] civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Casualty Ins. Co.*, 194 Mich. App. 300, 313 (1992) (citations omitted).  The 'unlawful purpose' element means that "a claim for civil conspiracy may not exist in the air; rather it is necessary to prove a separate, actionable tort."  *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 257 Mich. App. 365, 384 (2003) (quoting *Early Detection Ctr., PC v. N.Y. Life Ins. Co.*, 157 Mich. App. 618, 632 (1986)).  Here, defendants attack the sufficiency of the complaint's allegations both in regard to the existence of a "combination," and in regard to the underlying tort of fraud.

First, Howard notes that "an agent or employee cannot be considered a separate entity from his principal or corporate employer, respectively, as 'long as the agent or employee acts only within the scope of his agency of [sic] employment."   *Blair  v. Checker Cab Co.*, 219 Mich. App. 667, 674 (1996) (quoting *Metro Club, Inc. v. Schostak Bros. & Co.*, 89 Mich. App. 417, 420 (1979)) (alteration in original).  This is because "a corporation

acts only through those persons and conspiring with those persons would be like conspiring with itself." *Id.* (quoting *Schostak,* 89 Mich. App. at 420).

It appears the Michigan courts have adopted an exception to this rule, however, for cases "where the directors have an independent personal stake in a particular action, and therefore, are actually acting on their own behalf." *Id.* at 674-75 (citations omitted).  The defendant in *Blair* was the Checker Cab Company, a corporation consisting of Detroit taxicab owners.  The Company was in the business of providing, among other things, centralized dispatch services for Detroit area cab drivers.  The plaintiff alleged that the Company and some of its directors and officers, who were also cab owners, conspired to restrain trade in the taxicab industry by preventing member-owners from soliciting each others' cab drivers.  In reversing a grant of summary disposition on the complaint, the court found that because the plaintiff had alleged that the officers and directors personally benefitted from the artificially high fees they were able to collect from their drivers due to the collusion, her complaint fell within the independent-interest exception to the general rule.  *Id.* at 675-76.

Here, Hanover does not deny that Howard was an agent of Metro, but argues that his actions fall within the "independent personal stake" exception because he stood to benefit personally from the alleged scam.  The Court agrees with Howard that Hanover has not alleged facts that fit within this exception.  First, the complaint does not in fact allege that Howard benefitted from the escrow deposit in any way.  Second, even if Howard is a member of Metro as both parties seem to concede, this would be unlikely to confer upon him a truly independent stake in the conspiracy, because his stake in the outcome would be entirely derivative of Metro's own.

As Howard was Metro's agent, then, the two were unable to conspire with each other to defraud Hanover.  This alone is insufficient to defeat the conspiracy claim, however, because Hanover does not allege a conspiracy only between Howard and Metro (or between Chipman and Excel Title or Excel Escrow, for that matter).  Instead, the complaint states that *all* the defendants conspired with each other to commit the fraud.  There is no indication that Howard was an agent of Excel Title or Excel Escrow, or that Chipman was an agent of Metro.  Accordingly, it is legally possible for these persons to conspire with each other.  Nevertheless, Howard also argues that the complaint does not allege the "concerted action" element of civil conspiracy, because it does not offer any material allegation that  they worked in concert to actually commit the misrepresentations that constituted the fraud.  The Court cannot agree.  The complaint alleges that "Defendant Chipman and [Metro's] principals were in communications regarding the Agreement nearly two weeks before the agreement was ever executed," Compl., document no. 1, ¶ 38, and that defendants "engaged in extensive telephone and e-mail communications with Plaintiff's representatives to negotiate the Agreement and discuss the status of attempted purchases," *id.* at ¶ 29.  It was during the course of these negotiations that Howard's first fraudulent misrepresentations allegedly occurred.  *Id.* at ¶¶ 11-12, 86, 88.  Hanover further alleges that Chipman falsely promised to hold the escrow monies properly, *id.* ¶¶ 87, 89, 104, and that while the contract was being performed, both defendants frequently misled Hanover as to the status of the funds and the property sale negotiations, *id.* ¶¶ 50-51, 94-95, 98.  It is true that the complaint pleads the existence of an agreement to make these misrepresentations only in conclusory fashion.  *Id.* ¶¶ 48, 52.  Nevertheless, given the inherent plausibility of an allegation of a conspiracy between a middleman and an escrow

8

agent to loot the escrow account for their own benefit, the Court finds that the complaint sufficiently alleges the existence of a combination and concerted action in this regard.

Whether the complaint has also sufficiently alleged the underlying fraud is another question.  Under Michigan law the elements of common-law fraud are

> (1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336 (1976) (quoted in *Cooper v. Auto Club Ins. Ass'n*, 481 Mich. 399, 408 (2008)) (citation omitted).  Pursuant to Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  In this Sixth Circuit, this requires a plaintiff "at a minimum, to 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'"  *Coffey v. Foamex LP*, 2 F.3d 157, 161-62 (6th Cir. 1993).  This standard applies to both Count II, alleging civil conspiracy to defraud, and Count VIII, alleging fraud in the inducement of the contract between Hanover and Metro.

In regard to the alleged fraud, Hanover's complaint contains the following allegations:

¶ 11: "Defendant Howard represented that he was able to deliver residential property in the New Jersey area by purchasing it at a significant discount from his contacts in the real estate market."

9

¶ 12:   "[I]n the summer of 2008, Plaintiff was told by Defendant Howard that Defendant Howard was able to obtain significant discounts upon numerous properties in New Jersey."

¶ 50: "In furtherance of the civil conspiracy amongst the Defendants, the Defendants have in fact defrauded Plaintiff on many occasions by misrepresenting to Plaintiff the status of funds in the escrow account(s) and the uses of said funds."

¶ 51:   "Defendants have further defrauded Plaintiff by representing to Plaintiff that specific agreements to purchase specific properties had been executed (Exh. J) when such no such [sic] agreements had been reached with the properties' owners.  Exhibit K.

[Exhibit J is an email from Brian Kinsley of Metro Equity, dated 9/26/2008.  It states: "Hanover and Home 911:  There are the properties that are locked and scheduled for close on Thursday:

39 Atno

217 Autumn

86 Prospect

. . . .

 Exhibit  K is an email from a bank representative, dated 11/18 2008, and stating that "there was never a fully executed contract for 86 Prospect St., Jersey City, NJ with Metro Equity LLC.  The contract was signed by the Buyer but never the Seller."]

¶ 53: "Plaintiff has incurred damages due to Defendnats' civil conspiracy [to defraud.]

¶ 86: "As set forth herein, Defendant Howard represented to Plaintiff that Defendant Howard and [Metro] could secure properties for a fraction of the list price."

¶ 87:   "As set forth herein, Defendant Chipman, EES and ETA received plaintiff[']s escrowed funds in a result [sic] of Defendant Chipman's representations that the same would be held in escrow and distributed pursuant to the Agreement."

¶ 88:   "Each of the representations made by Defendant Howard was false."

¶ 89:   "Each of the representations made by Defendant Chipman was false."

¶ 93:   "Unbeknownst to Plaintiff, Defendants harbored an undisclosed plan to use Plaintiff[']s funds for reasons other than those provided to Plaintiff."

¶ 94:  MEG made false representations in writing of an existing material fact, i.e., that it would sell real property to Plaintiff at only 45.5% of the prices at which those properties were offered in the marketplace."

¶ 95:  "MEG made false representations in writing of an existing material fact, that it had reached agreements to purchase specific properties identified within the Agreement, when, in fact, no such agreements had been reached."

¶ 96:   "The false representations made by [Metro] were made to Plaintiff for the purpose of inducing Plaintiff to enter into the Agreement and, as well, keep sending money for more properties so that [Metro] could use those funds to pay higher prices for those properties to the . . . Sellers,

¶ 98:  "[Metro's] representations to induce the Agreement were false promises to do acts (specifically, to deliver properties for only 45.5% of their listed prices ) and to surrender deeds to the properties to Plaintiff."

¶ 100: "[Metro] made such promises with no intention of fulfilling them."

¶ 101: "Said promises were made to Plaintiff for the purpose of inducing Plaintiff to tender funds to defendants, and those promises were relied on by Plaintiff in conveying those funds to defendants."

Most of these allegations do not satisfy the requirements of particularity, as articulated in *Coffey*, because they do not include the time or place of the assertedly fraudulent statements.  The lone exception is Paragraph 51 of the complaint, which alleges that a specific, identified email (Exhibit J) fraudulently stated that Metro had three named properties under contract, when in fact it did not.  Unfortunately for Hanover, with respect to these alleged misrepresentations the complaint does not allege fraudulent intent.  Paragraph 96 does allege something of a scheme, but the complaint is devoid of any allegation that any of the defendants knew that the September 26th, 2008 email contained false statements of fact, or were reckless as to whether it did.  Paragraph 100 of the complaint alleges fraudulent intent as to misrepresentations of defendant's intention to perform on the contract at the time they promised to do so, but that is not relevant to defendants' intentions as to statements made in the course of performing the contract.  The Court will thus grant defendants' motion to dismiss the conspiracy/fraud claim.  Because none of the alleged fraudulent statements that occurred before the formation of the contract are pleaded with the requisite specificity, the Court will also dismiss Hanover's fraud in the inducement claim.

Hanover has requested that it be granted leave to amend its complaint, should the Court dismiss these claims.  That leave will be granted, and defendants will be free to move to file a renewed motion to dismiss the amended complaint.  In this light, although the Court need not definitively reach the other arguments asserted by defendants in support of dismissal, it will briefly note that they do not clearly render any amendment futile.  Defendants correctly state the rule that "[a]n action for fraudulent misrepresentation must be predicated upon a statement of past or existing fact.  A mere broken promise does not constitute fraud, nor is it evidence of fraud.  . . .  [F]uture promises [are] contractual and

cannot be the basis of an action for fraud."  *Marrero v. McDonnell Douglas Capital Corp.*,
200 Mich. App. 438, 444 (1993) (citations omitted).   Defendants argue that Hanover's
allegations as to their statements about how the escrow funds would be used therefore state
only a contract claim.

This argument does not apply to the portion of Hanover's civil conspiracy to defraud
claim which is grounded in Metro's alleged misrepresentations as to the then-current status
of the escrow funds or the negotiations to purchase specific properties.  With respect to any
aspects of the false-promises claim that may appear in an amended complaint, however,
the Court notes Hanover's rejoinder that under an exception to the general Michigan rule,
"a fraudulent misrepresentation may be based  upon a promise made in bad faith without
intention of performance."  *Hi-Way Motor*, 398 Mich. at 337; *Gorman v. Soble*, 120 Mich.
App. 831, 840 (1982) (citing *Danto v. Charles C. Robbins, Inc.*, 250 Mich. 419, 425 (1930)
("If at the time the representation was made there was no present intent to carry it out,
however, the representation constitutes fraud."); *see also Marrero*, 200 Mich. App. at 444
(discussing an exception for a defendant's statements about his intentions that he "knew
at the time were false").

Metro appears to argue that notwithstanding these cases, Hanover's proper remedy
is solely in contract insofar as it alleges that defendants falsely promised to take actions
that they had an independent contractual duty to perform.  The briefing on this issue has
been sparse at best.[2]  Rather than ruling on the issue now, the Court will content itself to
note an apparent inconsistency in the Michigan cases as to whether a fraud claim can be

---

[2]  This is the first of several areas in which the briefs barely identify, let alone explain,
the legal theories and caselaw on which defendants seek dismissal.  Should the complaint
be amended and the defendants file renewed motions to dismiss, it is the Court's hope that
this will be rectified.

13

grounded solely in a promise to perform an action that was also the defendant's contractual duty. *Compare Addy Machinery Co. v. Vantage Industries LLC*, Nos. 279326 & 280526, 2008 WL 4958688, *4-*5 (Mich. App. Nov. 20, 2008) (permitting such a claim) *with Flagstar Bank v. Harbor Northwestern-30800*, No. 266198, 2006 WL 954155, *4 (Mich. App. Apr. 13, 2006) (disallowing a similar misrepresentation claim). In the Court's view it will be better resolved on a motion to dismiss the amended complaint, should one be filed.

III.    Counts V and VII-- Unjust Enrichment and Promissory Estoppel

No defendant named in Counts III (breach of fiduciary duty), IV (breach of contract) and VI (declaratory judgment) offers any argumentation as to why those counts should be dismissed.[3]   In Count V, Hanover asserts that all defendants were unjustly enriched when Hanover wired them money only to have the defendants fail to do what they promised to do.

Under Michigan law,

> [i]n order to sustain the claim of unjust enrichment, plaintiff must establish (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant. If this is established, the law will imply a contract in order to prevent unjust enrichment. However, a contract will be implied only if there is no express contract covering the same subject matter.

*Belle Isle Grill Corp. v City of Detroit*, 256 Mich. App. 463, 478 (2003) (citations omitted).

Somewhat similarly,

> [t]he elements of promissory estoppel are (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, (3) which in fact produced

---

[3]  The individual defendants, Chipman and Howard, do make arguments as to why contract claims cannot be brought against them.  But the complaint does not assert a contract claim against either Chipman or Howard.

reliance or forbearance of that nature, (4) in circumstances such that the promise must be enforced if injustice is to be avoided.

*McMath v. Ford Motor Co.*, 77 Mich. App. 721, 725 (citations omitted).  As with a claim for unjust enrichment, "if the performance which satisfied the detrimental reliance requirement of the promissory estoppel theory is the same performance which represents consideration for the written contract, the doctrine of promissory estoppel does not apply."  *McCartney v. Lakeside Community Bank*, No. 272131, 2007 WL 914664, at *2 (Mich. App. Mar. 27, 2007).

Here, defendants note that Hanover has alleged the existence of a contract between it and Metro, and that its entire alleged detrimental reliance on defendants' promises -- depositing the escrow money -- was a portion of its performance on the contract.  This, defendants argue, should preclude claims for unjust enrichment or promissory estoppel. Hanover responds that the existence of a contract with Metro does not prevent it from recovering in unjust enrichment or promissory estoppel from defendants who were not parties to the contract.  In general, Hanover's argument is a correct statement of Michigan law.  In *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 199-200 (2006), the Michigan Supreme Court stated that "we perceive no reason why a plaintiff should not be allowed to simultaneously and alternatively assert a contract claim against one defendant with whom an express contract exists and a quantum meruit claim against a *different* defendant with whom no express contract exists."  Although the Court is aware of no Michigan case establishing an analogous rule in the promissory estoppel context, it agrees that such a rule exists in that context-- that is, that in general there is no obstacle to a single act by a plaintiff qualifying as both performance on a contract with one defendant, and detrimental reliance on a promise by another defendant.

15

Hanover's claims against Chipman, Excel Title, and Excel Escrow fall squarely under these rules. The claims against Metro, of course, do not, because Hanover does allege a contract with Metro, and the deposit of the escrow money was in fact performance on that contract. Howard argues that the contract also precludes claims against him personally for unjust enrichment and promissory estoppel, on the theory that as an agent of Metro, his duties to Hanover were also defined by the contract. The Court is inclined to agree with Howard's argument in this regard, but need not rule on the matter, because even if Hanover could not recover from both Metro (in contract) and Howard (in unjust enrichment or promissory estoppel), the Court regards the unjust enrichment claims against both Metro and Howard as acceptable alternative pleading under Federal Rule of Civil Procedure 8(c)(3). Hanover alleges that it reached an agreement with Metro, pursuant to which Hanover parted ways with some of its money. As a matter of law, either this agreement was a legally binding contract, or it was not. If the former, Hanover's proper claim to recover its money is in contract; if the latter, Hanover can assert unjust enrichment and promissory estoppel claims. Under Rule 8(c)(3), the inconsistency of these theories does not prevent their simultaneous assertion.

V.   Count IX-- Negligent Misrepresentation

Hanover's final theory of liability is that if defendants' misrepresentations were not fraudulent, they at least amounted to tortious negligent misrepresentation. A claim of negligent misrepresentation "requires plaintiff to prove 'that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care.'" *Marble Cleary Trust v. Edward-Marlah Muzyl Trust*, 262 Mich. App. 485, 502 (2004). In addition, the misrepresentation must have been "of facts that can be independently verified." *Id.* (citing *City Nat'l Bank v. Rodgers*, 155 Mich. App. 318, 323-24

16

(1986)).   As a result, statements of opinion cannot give rise to liability for negligent misrepresentation, even if the opinion ultimately turns out to be incorrect.  *City Nat'l Bank*, 155 Mich. App. at 323-25 (attorney's legal opinion was not actionable on a theory of negligence).

As an initial matter, the Court concludes that a claim of negligent misrepresentation under Michigan law is not subject to the heightened pleading requirement of Rule 9(b). Although the Court is unaware of any Sixth Circuit precedent dealing with this question, the Fourth, Fifth, Seventh, Eighth and Ninth Circuits, at least, have held that negligent misrepresentation is not "fraud" within the meaning of the rule.  *See Baltimore County v. Cigna Healthcare*, 238 F. App'x 914, 921 (4th Cir. 2007); *Gen. Electric Capital Corp. v. Posey*, 415 F. 3d 391, 396-97 (5th Cir. 2005); *Tricontinental Inds., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F. 3d 824, 833 (7th Cir. 2007); *In re NationsMart Corp. Securities LItigation*, 130 F. 3d 309, 315 (8th Cir. 1997); *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1105 (9th Cir. 2003).  It is true that the Fifth Circuit has created an exception to this rule, and applied the Rule 9(b) standard to negligent misrepresentation claims where the plaintiff's "fraud and negligent misrepresentation claims are based on the same set of alleged facts" and the parties themselves do not "urge a separate focus on the negligent misrepresentation claims." *Benchmark Electronics, Inc. v. J.M. Huber Corp.,* 343 F. 3d 719, 723 (5th Cir. 2003).  In the Court's view, however, a negligent misrepresentation claim can easily be pleaded in the alternative to a fraud claim on a single set of facts, without itself somehow being transformed into an allegation of fraud subject to Rule 9(b). Moreover, the Court concludes that a plaintiff's failure to "urge a separate focus" on a particular claim cannot operate as a waiver of the notice pleading standards of the Federal Rules.   Accordingly, the Court holds that in order to state a claim for negligent

17

misrepresentation under Michigan law, Hanover need simply plead "a short and plain statement of the claim showing that [it] is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Howard argues in conclusory fashion that Hanover has failed to allege facts establishing that he owed Hanover any duty of care. Hanover has, however, adequately pleaded that it negotiated and signed a contract with Metro Equity, with Howard acting on Metro's behalf. The Court has little difficulty in concluding that persons negotiating or performing a contract may be held to have a duty of care in representing to each other their intentions with regard to the contract and the actual status of their performance.

Howard also maintains that Hanover has not alleged that he misrepresented any independently verifiable facts. To the extent that Hanover's misrepresentation claim is grounded in defendants' representations as to the then-current status of the escrow funds and the purchase agreements, *see, e.g.,* Compl., document no. 1 ¶¶ 50-51, this argument must fail. Moreover, because these allegations need not be pleaded with particularity in order to state a claim for negligent misrepresentation, as opposed to fraud, they are sufficient even with respect to the alleged misrepresentations that are not specifically identified by time, place, and content.

To the extent that Hanover's negligent misrepresentation claim is predicated on defendants' misrepresentations of their intentions in the course of negotiating the agreement, however, the Court agrees that it is an untenable attempt to fit a round peg into a square hole. As Michigan law recognizes in the context of fraud, a promise to do something (or not do something) in the future can be false only if at the time it is made the promisor actually has no intention of following through. If such a misrepresentation is intentional, it is actionable fraud and not negligent misrepresentation. As a practical matter, this leaves little room for an independent tort of negligent misrepresentation of one's

18

present intentions.  Although it is perhaps not completely impossible, it would be a very rare

case in which a person could misrepresent his own present intentions without doing so

knowingly.  At any rate, there is absolutely nothing in the complaint to indicate that was the

situation here.[4]   Accordingly, the Court need not decide whether there might be a very

narrow slice of cases in which a plaintiff could recover for a defendant's negligent

misrepresentation of the defendant's own intentions: even if there are such cases, this is

not one of them.  Insofar as it is based on allegations that defendants falsely promised to

take action in the future, Hanover's claim for negligent misrepresentation must therefore

be dismissed.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that:


Defendants' motions to dismiss are **GRANTED IN PART** and **DENIED IN PART**;


Counts II and VIII of the complaint are **DISMISSED WITHOUT PREJUDICE**;


Count IX of the complaint is **DISMISSED WITH PREJUDICE**, insofar as it alleges a

negligent misrepresentation of defendants' then-current intentions; and

---

[4]  Nor does there appear to be any meaningful distinction to be drawn in this case between the element of duty, in negligent misrepresentation, and the corresponding but perhaps not identical element of intent to induce reliance, in fraud.  The complaint makes it crystal clear that Howard did in fact intend to induce reliance, and it is impossible to conceive of any set of facts consistent with the complaint that would allow Hanover to recover without proving this element.

Within 20 days of the entry of this order, plaintiff may file an amended complaint addressing the deficiencies noted herein and reasserting the claims that were dismissed without prejudice;

The scheduling conference in this matter, currently set for August 12th, 2009, is **AJOURNED**.  If no amended complaint is filed, the conference will be rescheduled after the deadline for filing the amendment has passed.  If an amendment is filed, the conference will be rescheduled after an answer to the amendment is filed.

**SO ORDERED.**


s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 14, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 14, 2009, by electronic and/or ordinary mail.

Alissa Greer
Case Manager